**PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.**

ATTORNEYS AT LAW
PENNSYLVANIA AVE. AND BROOM ST.
1200 N. BROOM STREET
WILMINGTON, DE 19806

JOHN C. PHILLIPS, JR.
ROBERT S. GOLDMAN
LISA C. MCLAUGHLIN
JAMES P. HALL
DAVID A. BILSON
MEGAN C. HANEY

(302) 655-4200 (P)
(302) 655-4210 (F)

March 6, 2017

**BY CM/ECF**

The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street, Room 6124, Unit 26
Wilmington, DE 19801-3555

Re: *Acorda Therapeutics, Inc. et al., v. Roxane Labs. Inc., et al.,* C.A. No. 14-882-LPS

Dear Chief Judge Stark:

I write on behalf of Defendants Roxane Laboratories Inc., Teva Pharmaceuticals USA, Inc., and Mylan Pharmaceuticals Inc. (collectively, "Defendants") in response to the following three questions posed in the Court's Oral Order of February 27, 2017:

**(1) Does the record in this case reflect that the sustained release formulation of 4-AP used in Hayes to test the drug's pharmacokinetic parameters was identical to the formulation used in the MS-F201 study (disclosed in Goodman) or Schwid?**

Yes. The trial record shows—indeed, Acorda's witnesses have conceded—that the sustained release ("SR") formulation of 4-AP (i.e., fampridine-SR) used in the Hayes study (e.g., the Hayes III reference) to test the drug's pharmacokinetic parameters was identical to the formulation used in the MS-F201 (Goodman) and Schwid studies. This is also the same formulation used in Acorda's Ampyra product.

It is undisputed that Acorda did not develop its own sustained release 4-AP formulation, or conduct any formulation work. Tr. (Blight) 163:10-20; (Cohen) 304:9-21. Instead, Acorda took exclusive licenses from Elan to use Elan's existing sustained release 4-AP formulation (consistently referred to as "fampridine-SR" or "4-AP SR") to treat multiple sclerosis and spinal cord injury patients. Tr. (McDuff) 650:8-15, (Cohen) 303:17-304:5; JTX-020; JTX-021. This fampridine-SR formulation was used by Elan in the Elan-sponsored study reported in Schwid. JTX-104 at AMPDEL0166739; Tr. (Peroutka) 91:15-92:4.

Acorda also used Elan's fampridine-SR formulation when sponsoring the Hayes studies, published in 2001 (JTX-068) and 2003 (JTX-069). Hayes III reported on two phase 1 clinical studies that "were conducted to determine the pharmacokinetics and safety profile of an oral, sustained-release (SR) formulation of fampridine (fampridine-SR, 10-25 mg)[.]" JTX-069 at AMP-DEF-0000495; *see also* Tr. (Peroutka) 87:25-88:3. Although both studies were "[s]ponsored by Acorda Therapeutics, Inc," Hayes III reported that the "Fampridine-SR" formulation came from Elan: "Fampridine-SR was supplied as SR matrix tablets, each containing a 5-mg equivalent of fampridine (Elan Pharmaceutical Technologies, PLC, Athlone, Ireland) and

was administered in multiples thereof." JTX-068 at AMP-DEF-0000475; JTX-069 at AMP-DEF-0000495, 497. Hayes also cited the Elan-sponsored Schwid study as using "sustained-release 4-aminopyridine"—i.e., fampridine-SR. JTX-069 at n.3.

The MS-F201 study reported in the Goodman references (published in 2002 and 2003) used this same "fampridine-SR" formulation. *See* JTX-062 at AMP-DEF-0000467; JTX-080A at AMPFH0007502, JTX-061. This phase 2 study represented the next step in Acorda's drug development following the Hayes studies. Tr. (Peroutka) 87:25-88:3; Tr. (Cohen) 306:6-307:7.

Acorda's witnesses confirmed that the same "fampridine-SR" formulation was used in the studies reported in the Schwid, Hayes and Goodman references. Acorda's CEO and one of the listed inventors of the Acorda patents, Dr. Ronald Cohen, conceded that Acorda "used Elan's [fampridine-SR] formulation for [its] clinical studies," which included the Hayes and Goodman studies. Tr. (Cohen) 304:3-8. He further testified that Acorda "*never modified* the sustained release 4-AP product that it got from Elan" before 2004. Tr. (Cohen) 304:6-21 (emphasis added); *see also id.* at 305:17-24. Co-inventor Dr. Andrew Blight confirmed that after Acorda took over the fampridine-SR project, Acorda "did not do any formulation work" but, instead, used Elan's existing fampridine-SR formulation without modification. Tr. (Blight) 163:6-20; *see also id.* at 165:8-17, 166:12-14; Tr. (Cohen) 280:22-281:3, 281:11-19, 302:23-303:4.

Consistent with these admissions, Plaintiffs have never tried to distinguish the formulation used in the Hayes studies from the Ampyra formulation (the embodiment of the patents-in-suit)—nor have they disputed that these formulations yield the claimed pK values. *See* D.I. 265 (Defs.' Opening Post-Trial Br.) at 42. As Plaintiffs admitted in their post-trial briefing, they "do not dispute that the Hayes references disclose that the Elan sustained release formulation used in the spinal cord injury studies reported in those references when dosed at 10 mg BID yielded pharmacokinetic values that fall within the scope of the Acorda Patent claims (*or that Ampyra would do so*)[.]" D.I. 272 (Plaintiffs' Answering Br.) at 71 (emphasis added).

In short, the record confirms that the sustained release formulation of 4-AP used in Hayes to test the drug's pK parameters was identical (aside from dose variations) to the formulation used in Acorda's MS-F201 study disclosed in Goodman, as well as in the earlier Schwid study.

**(2) If so, does the record reflect that a POSA would have been able to infer this connection from publicly-available prior art?**

Yes. A POSA would have been able to infer from publicly-available prior art that Elan's fampridine-SR formulation tested in Hayes, resulting in the pK profiles reported in Hayes III, was the same formulation studied in the Goodman and Schwid references.

First, all three prior art studies describe the drug formulation the same way—as one particular product. Hayes and Goodman both refer to the tested drug as "fampridine-SR." *Compare* JTX-069 (Hayes) *with* JTX-080 (Goodman). Schwid describes the formulation similarly as "4-aminopyridine sustained release (4AP SR) (fampridine, EL-970)." JTX-104.

Second, a POSA would have been able to infer that all three studies were related because they have overlapping authors and reference the same prior studies using the same "fampridine-SR." Dr. Goodman was the senior author in Schwid and the lead author of the Goodman

references. And Drs. Cohen, Blight and Katz of Acorda co-authored both the Hayes and Goodman references—with Hayes III citing Schwid and disclosing that these Acorda-sponsored studies used "*Fampridine-SR*" tablets that were "supplied" by "Elan." JTX-069 at AMP-DEF-0000497. Likewise, Goodman builds on Hayes and reports that "[t]he safety profile of *fampridine SR* was consistent with *previous experience*." JTX-061; JTX-062; *cf.* Tr. (Peroutka) 714:14-21. Thus, a POSA would have inferred that Acorda and Elan were developing this particular product jointly.

Third, Acorda publicly disclosed in December 2003 (a year before the critical date) that "[a]pproximately 550 people have been treated with Fampridine-SR in 14 clinical trials, including eight clinical trials for SCI and six clinical trials for MS." DTX-584. This statement further reported that "Acorda is currently conducting . . . a Phase 2 clinical trial in MS." *Id.* Acorda's public statement referred only to a single "Fampridine-SR" product. Thus, a POSA in December 2004 with knowledge of the Schwid, Hayes and Goodman references—which were sponsored by Acorda or Elan and used Elan's "fampridine-SR" formulation—would have inferred that Acorda's public statement was referring, in part, to the studies reported in those three references.

Fourth, Plaintiffs cannot credibly dispute that a POSA would have inferred that Acorda and Elan were jointly developing the "Fampridine-SR" product. To the extent they try to argue otherwise, the Court should take judicial notice under Fed. R. Evid. 201 of an Acorda press release from October 3, 2003, more than a year before the critical date, which confirms that "Acorda . . . has entered into an expanded license agreement under which Elan Corporation has granted to Acorda exclusive, worldwide rights to Fampridine-SR for all indications" to replace a "joint venture between Acorda and Elan" related, in part to "multiple sclerosis[.]" *See* Ex. 1.[1]

Finally, Defendants' expert, Dr. Peroutka, when referring to the "EL 970" fampridine SR formulation tested in Schwid (*see* JTX-104 at AMPDEL0166739), testified that he had "good reason to think that that is actually Ampyra, the drug under discussion today. The same formulation." Tr. (Peroutka) 91:25-92:4. Acorda has not disputed Dr. Peroutka's testimony in this regard.[2]

In sum, a POSA would have inferred that the Schwid studies, the Hayes phase 1 studies and the Goodman phase 2 study used the identical "Fampridine-SR" formulation.

---

[1] This press release, which is a party admission under Fed. R. Evid. 801(d)(2), is still available at the following website: http://ir.acorda.com/investors/investor-news/investor-news-details/2003/Acorda-Therapeutics-Expands-Licensing-Rights-To-Fampridine-SR/default.aspx. Defendants notified Plaintiffs' counsel on March 3rd that they may rely on this press release, as well as Exhibits 2 and 3 discussed in footnote 2. Plaintiffs noted an objection to any effort to supplement the record. To be clear, however, there is no need to supplement the record unless Plaintiffs attempt to make arguments inconsistent with their prior public statements.

[2] Again, to the extent Plaintiffs try to dispute this testimony now, the Court should take judicial notice of published prior art, available in 2000, confirming that Acorda was using Elan's "EL-970" formulation "in phase II development . . . for multiple sclerosis (MS)." *Compare* Ex. 2 (publicly available at https://www.ncbi.nlm.nih.gov/pubmed/11249722) *with* Ex. 3 at p. 4 of 13 (Acorda's 2009 Ampyra NDA submission identifying EL-970) (pertinent pages only).

**(3) Is there other evidence in the record to support a finding that a POSA would have been aware that a sustained release dosage form achieving the pharmacokinetic parameters disclosed in Hayes would have been associated with an improvement in walking in MS patients?**

Yes. A POSA as of December 2004 would have known that the pK parameters disclosed in Hayes III were associated with improvement in walking in MS patients.

The Goodman references report "[e]vidence of dose-response"—e.g., "*[s]ignificant benefit on timed walking*" – "in 20-40 mg/day range" of 4-AP. JTX-080A at AMPFH0007504. This translates into 10, 15 or 20 mg BID doses. A POSA would have associated this improvement in walking in MS patients with the pK profiles reported in Hayes III, which reported on the same 10, 15, and 20 mg doses. JTX-069 at AMP_DEF-0000498, Table 2.

As Dr. Goodman admitted, the pK profiles reported in Hayes III for these doses, including the 10 mg dose, "may certainly show the pharmacokinetic profile that's analogous to what would be found in MS patients. I don't have any dispute with that." Tr. (Goodman) 510:8-11. Indeed, the only steady state pharmacokinetic data provided in the Acorda patents came verbatim from the Hayes reference. Tr. (Kibbe) 223:25-224:15. As both Drs. Kibbe and Peroutka testified, a POSA would expect no difference in the pK results from dosing a multiple sclerosis or a spinal cord injury patient. *Id*. 224:16-225:7; *see also* Tr. (Peroutka) 146:9-147:3.

This is why Acorda used the exact pK profiles from Hayes III in the Acorda patents, confirming that these prior art profiles were *not* an inventive step. *Compare* JTX-069 at AMP-DEF-0000498, Table 2 *with* JTX-002 at Table 6; *see also* Tr. (Cohen) 305:21-306:5 (the purported invention claimed in the Acorda patents is the 10 mg dose). In fact, Acorda readily conceded at closing that "[i]t was known in the art that a sustained release formulation of 10 [milligrams] BID could achieve [the claimed] PK." Tr. (Becker) at 793:23-794:3. Thus, while a POSA reading Hayes *in isolation* may not have known that the disclosed pK profile is associated with an improvement in walking, a POSA reading Hayes *with* the Goodman references (and/or Schwid) would draw that conclusion.

Perhaps most importantly, a POSA would also be aware that, as Dr. Kibbe testified, the "claimed PK parameters resulting from the administration of 10 milligrams BID of 4-AP … were a natural result of the administration of the 10 milligrams sustained release product." Tr. (Kibbe) 226:10-13. As a matter of law, "[a]n obvious formulation cannot become nonobvious simply by administering it to a patient and claiming the resulting serum concentrations." *Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1354 (Fed. Cir. 2012). This applies to pK profiles as well.

Therefore, for the reasons discussed in Defendants' post-trial brief, the asserted claims are all obvious, including the claims that require certain pK profiles.

Respectfully submitted,

*/s/ John C. Phillips, Jr.*

John C. Phillips, Jr. (No. 110)

cc: Counsel of Record (via email and CM/ECF); Clerk of Court (via hand delivery)